UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.D.G., et al., ) | Case No.: 1:13-cv-02057 - JLT |
| ) | |
| Plaintiffs, ) | ORDER DENYING PLAINTIFF'S MOTION TO |
| ) | RE-OPEN THE DEPOSITION OF SEAN |
| v. ) | WOESSNER |
| ) | |
| CITY OF BAKERSFIELD, et al., ) | |
| ) | (Doc. 47) |
| Defendants. ) | |
| ) | |
| ) | |

Plaintiffs seek to re-open the deposition of Defendant Sean Woessner, arguing defense counsel "obstructed the deposition on numerous occasions." (Doc. 47 at 3.) Plaintiffs argue sanctions should be imposed under Rule 30 of the Federal Rules of Civil Procedure for the obstruction, and that the second deposition is an appropriate sanction.

Because Plaintiffs fail to identify an "excessive number" of inappropriate objections, demonstrate that the questions asked to which the objections were interposed were proper or demonstrate that the re-opening of the deposition is appropriate under Rule 26(b)(2)(C), Plaintiffs' motion is **DENIED**.

**I.     Background**

On January 1, 3013, "in celebration of the New Year," Abel Gurrola and two companions "fired several rounds from a .22 caliber rifle into the ground of the open field located to the south east of the 720 Terrace Way apartment complex." (Doc. 13 at 2.) At approximately 12:19 a.m., Bakersfield

1

1  Police Officers Woessner and Aleman were dispatched to the apartment complex "to investigate a
2  report of shots fired." (Doc. 1 at 14, ¶ 25.) Plaintiffs allege the officers observed Gurrola, who "ran in
3  the opposite direction and into the well lit courtyard of the apartment complex." (*Id.*, ¶¶ 26-27.)
4  Plaintiffs assert Woessner and Aleman "fired their service weapons multiple times," striking Gurrola
5  "in the back of the head." (*Id.*, ¶ 28.)

6  Plaintiffs initiated this action in Kern County Superior Court by filing a complaint against the
7  City of Bakersfield; Greg Williamson, individually and in his capacity as Chief of Police of the
8  Bakersfield Police Department; Officer Woessner; and Officer Aleman by filing a complaint on
9  September 20, 2013. (Doc. 1.) Plaintiffs assert Defendants are liable for: assault; battery; negligence;
10 excessive force; a breach of the right of familial association; failure to train, supervise, and discipline; a
11 violation of Cal. Civ. Code § 52.1; and negligent infliction of emotional distress. (*See generally* Doc. 1
12 at 8-30.) Defendants filed a Notice of Removal on December 17, 2013, thereby initiating the action in
13 this Court. (Doc. 1.)

14 The Court held a Scheduling Conference with the parties on June 9, 2014. (Doc. 18.) The
15 Court ordered the parties to complete all non-expert discovery no later than March 17, 2015, and all
16 expert discovery no later than May 11, 2015. (*Id.* at 1, 3.) In addition, the Court informed the parties:
17 "A party with a discovery dispute must first confer with the opposing party in a good faith effort to
18 resolve by agreement the issues in dispute. If that good faith effort is unsuccessful, the moving party
19 promptly shall seek a telephonic hearing with all involved parties and the Magistrate Judge." (*Id.* at 4.)

20 Pursuant to the terms of the Court's Scheduling Order, on April 9, 2015, the parties notified the
21 Court of a dispute related to the deposition of Defendant Woessner. (Doc. 41.) Plaintiffs indicated
22 they were seeking to re-open discovery, and asserted that Defendant's counsel obstructed the deposition
23 of Woessner by instructing him to not answer certain questions. (Doc. 43 at 1.) However, prior to the
24 telephonic conference with the Court, the parties had not conferred regarding the conduct of the
25 deposition of Woessner. (*Id.* at 2.) Following further meet and confer efforts, the Court held a second
26 telephonic conference on April 17, 2015. (Docs. 45, 46.)

27 At the second informal conference, Plaintiffs' counsel noted that many times during the
28 Woessner deposition, defense counsel instructed the witness not to answer questions, despite that the

instruction was not made to preserve a privilege or to allow time to seek a protective order. According to Plaintiffs, "Woessner did not provide responses to hypothetical questions posed by Plaintiffs' counsel related to whether, if the circumstances were different—such as the officer being aware the decedent was not going to ambush him and the officer being aware the decedent was carrying an inoperable—he would have taken different actions." (Doc. 46 at 2.) Because the parties were unable to resolve the issues related to the deposition, the Court authorized Plaintiffs to file a motion to compel the further deposition of Woessner. (*Id.* at 3.) The Court ordered Plaintiff to address the specific deposition questions at issue, "address the factors set forth in Fed. R. Civ. P. 26(b)(2)(C) such to justify reopening the deposition," and "discuss the timeliness of the motion in light of the fact that the deposition occurred in January 2015." (*Id.* at 3.)

## II.     The Joint Statement

The parties filed a Joint Statement of Discovery Dispute as required by Local Rule 251(c) on May 11, 2015. (Doc. 47.)

### A.     Plaintiffs' Position

Plaintiffs assert "Woessner was asked several questions regarding training and hypotheticals that were aimed at discovering his intent behind the shooting and the training of the Bakersfield Police Department." (Doc. 47 at 2.) According to Plaintiffs, "Defense counsel, Michael Marderosian obstructed the deposition on numerous occasions. He instructed the witness not to answer [and] made long, suggestive objections which amounted to coaching. This, in turn, affected Plaintiffs' ability to take the deposition." (*Id.* at 3.) Plaintiffs identify the following portions of the deposition:

1.     Woessner Deposition 22:18- 23:4

MR. MARDEROSIAN: Mr. McMurray, I think I can cut this short. He's not going to give any opinions as to the accuracy in the report. The video obviously is his words, his personal knowledge, and it's on the video. As to whether or not the summary and the report is accurate or not, whatever that means, is an opinion, and I'm not going to allow him to comment on the accuracy of that. You can do that at the time of trial and compare the two or whatever. But he's not going to give an opinion.

2.    Woessner Deposition 93:10- 94:8

MR. MARDEROSIAN: You keep interrupting me. He's not going to look at a photo and give an opinion. He's told you what knowledge he has of the weapon at the scene. He saw it in the man's hands and he heard a weapon being fired or weapons being fired. He's not going to give an opinion as to whether or not the weapon is capable of firing or how much it can fire or whether or not something is jammed in it. He's not going to give any

3

opinions on that. He's here to give deposition testimony on what he knows. If you want to ask him a question if he knew that the weapon could only do certain things based on your representation in the form of a hypothetical, then, you know, he's not going to give an opinion. He can only tell you whether or not he knew that or not at the time of the incident. Are we clear?

    3.    <u>Woessner Deposition 96:9-23</u>

Q: Okay. And-- okay. Now, if Mr. Gurrola couldn't -- I want you to assume Mr. Gurrola did not have the ability to ambush you and fire the weapon at the time that he was seen behind the car under the carport where you marked on -- I believe it was -- well, we marked it on several, on Exhibit 4. Does that change your-whether or not you believe that he was intending to cause you harm?

MR. MARDEROSIAN: All right. He's not going to answer that question. It's an incorrect hypothetical. That was not the case. You're asking him to speculate. He's not going to speculate. He's not going to answer that question because you're asking him for an opinion.

    4.    <u>Woessner Deposition 97:19- 98:3</u>

Q:  Okay. But he in fact did not attempt to ambush you? He continued running, from what you learned at that -- on that morning, correct?

MR. MARDEROSIAN: I'm going to object. You're asking him to speculate. In his view he was attempting to ambush him. So you're now arguing with the witness, and you're asking him to speculate as to what the intent of Mr. Gurrola was. The officer has told you what he observed and what conclusions he drew from his observations based on the movements of Mr. Gurrola. He's not going to answer questions as to what was in Mr. Gurrola's state of mind.

    5.    <u>Woessner Deposition 110:19- 111:2</u>

Q: Now, you talked about he was-- what his intent was, Mr. Gurrola's intent. If you-- if you-- if he does not have the ability to fire that rifle at the time you shoot him, does that change your ability about whether or not he had the intent to shoot?

MR. MARDEROSIAN: He's not going to answer that question. It's pure speculation. He's not going to answer it. I instruct you not to answer the question.

    6.    <u>Woessner Deposition 113:24- 114:10, 114:23-115:5</u>

Q: Do you know whether or not your AR -15 has the ability to go through plaster walls?

MR. MARDEROSIAN: Again he's not giving an opinion. If you're trying to argue that he shot his weapon when there were children in the complex, he did fire the weapon. Obviously wondering if Mr. Gurrola might use that weapon to harm children, he was there to protect the public. So if we want to argue the case, then that's basically what it is. He's not going to give opinions to support your arguments. He will answer what he knows.
…
Q No, okay. The -- did you know whether they had the ability when you fired them to go through a plaster wall?

MR. MARDEROSIAN: Don't give any opinion, only what you know.

4

THE WITNESS: I'm not sure. I don't know anything about the plaster or anything, I'm sorry. I don't know.

(*See* Doc. 47 at 4-12.)

Plaintiffs contend these portions of the deposition show that Mr. Marderosian exhibited "disruptive behavior which resulted in the inability of counsel to take a complete deposition." (Doc. 47 at 13, emphasis omitted.) Plaintiffs assert he violated the Federal Rules of Civil Procedure by making speaking objections and directing Woessner to not answer some questions. (Doc. 47 at 5, citing Fed. R. Civ. P. 30(c)(2); *Security Nat'l Bank of Sioux City, Iowa v. Abbott Laboratories*, 299 F.R.D. 595, 607 (N.D. Iowa 2014). According to Plaintiffs, they "were significantly hampered in taking an effective deposition" as a result of these Rule violations. (*Id.* at 15-16.) Therefore, Plaintiffs argue the deposition of Woessner should be re-opened so Plaintiffs may "properly prepare [their] case against the Defendants, including Woessner and the City of Bakersfield." (*Id.* at 3.)

In addition, Plaintiffs seek an award of sanctions against Defendants' counsel for his objections during the deposition, arguing he should bear the cost of the second deposition. (Doc. 47 at 17-18.)

**B.    Defendants' Position**

Defendants assert Plaintiffs failed to bring this motion in a timely manner, because "[t]he deposition was taken on January 9, 2015, almost five months ago but the Plaintiffs took no steps, while discovery was still open, to raise any of the issues now presented to the Court." (Doc. 47 at 3.) As a result, Defendants urge the Court to find there has been a waiver of the issues. (*Id.* at 18-19, citing *Kendrick v. Heckler*, 778 F2d 253 (5th Cir. 1985); *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999); *Thompson v. City of Fowler*, 2014 U.S. Dist. Lexis 2014 (E.D. Cal. 2014)).

In addition, Defendants argue that"[t]here is absolutely no basis" to re-open the deposition of Woessner. (Doc. 47 at 20.) Defendants assert, "the vast majority of deposition issues raised by the Plaintiffs in this Joint Statement were asked and answered." (*Id.*) Further, Defendants argue Plaintiffs fail to provide the Court "with any indication" of how the information gleaned from Woessner responding to the hypothetical questions "would be admissible at trial." (*Id.* at 20.) Defendants conclude that sanctions should be imposed against Plaintiffs for being "unjustifiably dilatory in conducting discovery which has cost the Defendants time and money in having to respond to these

issues." (*Id.* at 23.)

### III.     Discovery and Depositions

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure. In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevancy is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

### IV.     Depositions

Parties may take the deposition of witnesses pursuant to Rule 30 of the Federal Rules of Civil Procedure. Once a deposition has been taken, it may not be re-opened without a stipulation or leave from the Court. Fed. R. Civ. P. 30(a)(2)(A)(ii). In considering whether a deposition should be re-opened, the Court should consider whether:

> (i) the discovery [second deposition] sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*Couch v. Wan*, 2012 WL 4433470 at *3 (E.D. Cal. Sept. 24, 2012) (quoting Fed. R. Civ. P. 26(b)(2)(C)). In addition, the moving party must demonstrate "need or good reason" for the re-opening of a deposition. *Couch*, 2012 WL 4433470 at *3; *see also Brookhamer v. Sunbeam Products, Inc.*, 2012 WL 5188302 at *2 (N.D. Cal. Oct. 19, 2012) (requiring the moving party to show "good need").

1     Whether to re-open a deposition is a matter within the Court's discretion.  *Couch,* 2012 WL
2  4433470 at \*3 (citing *Dixon v. The Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996)).  In
3  general, the re-opening of a deposition is disfavored, "except in certain circumstances, such as, long
4  passage of time with new evidence or new theories added to the complaint. *Id.* (citing *Graebner v.*
5  *James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1990)).

**V.     Discussion and Analysis**

    **A.     Rule 26(b)(2)(C) factors**

8     Though Plaintiffs argue that they "are seeking a complete deposition of one of the key
9  defendants in this matter," in their written papers, Plaintiffs did not identify the subject matter of the
10 proposed second deposition.  At the hearing, counsel clarified that they would limit the examination to
11 obtaining answers to the questions he did not answer at the deposition upon counsel's instruction.
12 Thus, the propriety of the unanswered questions is at issue.

13    Considering the issues set forth above, the first disputed area concerns whether Woessner would
14 confirm or deny that another person's written summary of the video interview of Woessner, was
15 accurate.  Plaintiffs do not provide the actual questions asked.  In any event, the Court concludes that
16 this topic has not been shown to be likely to lead to admissible evidence.  This other person's
17 interpretation of what Woessner said in the videotaped interview would not be the best evidence of
18 what Woessner actually said; clearly, the video, itself, serves that role.  In fact, Plaintiffs do not claim
19 the written summary is admissible.  Thus, exactly how an opinion of Woessner as to whether the
20 written document accurately summarizes what Woessner said in the video, could be admitted, is not
21 explained.

22    Similarly, as to the second area of dispute, Plaintiffs do not cite the question that had been
23 posed, assuming there was one. If there was a related a question, it appears to have concerned having
24 Woessner look at a photo and opine as to the operation of the weapon depicted in it.  Clearly, this
25 sought an expert opinion given the response would require the use of "scientific, technical or other
26 specialized knowledge." Fed. R. Evid. 702.  A question in this regard is not proper of a lay witness.

27    As to the third, fourth and fifth areas of dispute, each question required Woessner to assume a
28 circumstances related to the shooting at issue that were different from how Woessner perceived the

7

event. Then, he was asked to explain how he would have reacted in these different circumstances. These types of hypothetical questions are not appropriate for a percipient witness. A lay witness may offer opinions that are "rationally based upon the perception of the witness" or they are "helpful to clearly understanding the witness's testimony or to determining a fact in issue," but lay opinions may not be based "on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Thus, because the questions posed required Woessner to opine, not upon what he had perceived, but on a hypothetical set of circumstances he had not perceived, and there is no showing his testimony would assist in determining a fact in issue, they were improper.

Plaintiffs suggest that Woessner's testimony would have impacted the issue of the propriety of "the training of the Bakersfield Police Department." However, Plaintiffs do not explain how responses to the hypothetical questions would indicate any relevant failure in the training provided Woessner or whether his actions were in accord with this training. Notably, even if his actions varied from how he was trained, this would have little impact the outcome of the litigation[1]; instead, the focus of this litigation is on whether the actions he *actually* took—whether due to training, instinct or otherwise—were in accord with the law. This litigation is not the proper forum for determining whether Woessner would properly respond in a situation he did not confront.[2]

Moreover, Plaintiffs do not explain why Woessner's responses to hypothetical situations are necessary for their experts to formulate their opinions. Indeed, the focus of experts in this case should be—not how Woessner reacted[3] or might react in a different situation—but on how a reasonably well-trained officer would have reacted in similar circumstances to those which gave rise to Plaintiffs' claims. Finally, Plaintiffs had an ample opportunity to question Woessner directly regarding the training he received without relying upon hypothetical scenarios. Such information could have been

---

[1] As to the *Monell* claim, Plaintiffs must establish an unconstitutional custom or policy of inadequate training caused the damages alleged. Generally, one instance of conduct will not give rise to a determination of an unconstitutional custom. *Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988). Thus, one instance of hypothetical conduct to a hypothetical situation could not possibly demonstrate liability.

[2] If the purpose of these questions was to evaluate Woessner's training, they were not well-crafted to achieve this goal. Instead, it appears the questions were intended to undermine the reasonableness of Woessner's perception. However, even for this purpose, they were proper.

[3] Clearly, an expert would never be permitted to opine whether Woessner used excessive force; that is an ultimate question that the jury members will decide and an attempt to offer an expert opinion on this topic would improperly seek to invade the jury's role.

8

obtained also through written discovery. Because Plaintiffs fail to show a "good need" for the additional discovery, the burden that would be imposed upon Defendants of a second deposition "outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(2)(C); *Couch*, 2012 WL 4433470 at *3. Consequently, Plaintiffs' request to re-open the deposition of Woessner is **DENIED**.

### B. Sanctions under Rule 30

Participation by deponent's counsel in a deposition is generally limited by Rule 30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). In addition, counsel may "instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.* The making of an excessive number of unfounded objections or claims to privilege is sanctionable conduct. Fed. R. Civ. P. 30 Advisory Committee's Notes. Pursuant to Rule 30(d)(2), "[t]he court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Here, the transcript demonstrates that Mr. Marderosian made objections that did not necessarily comply with Rule 30. However, despite the claim that Mr. Marderosian's objections prevented Plaintiffs from obtaining full information, review of the deposition transcript reveals otherwise. Despite the comments made by Mr. Marderosian which are at issue here, Woessner answered most of the questions posed to him, and, as discussed above, Plaintiffs have not shown that Mr. Marderosian's statements precluded them from obtaining any information properly sought.

For example, as to the second objection identified above, Woessner answered the question and testified that he did not know whether Gurrola's gun was jammed. (*See* Doc. 46 at 2.) Further, at the informal conference, Plaintiffs' counsel conceded the deposition testimony addressed whether Gurrola ambushed Woessner because Woessner stated that he reached the breezeway while chasing Gurrola, where Woessner saw Gurrola did not stop and continued running. (*Id.*) Though Plaintiffs identify six instances in which they claim Mr. Marderosian objected or made a statement improperly, as to the four questions actually set forth by Plaintiffs in this dispute, one was answered and Plaintiffs have not demonstrated that the other three questions were properly posed. In any event, Plaintiffs have failed to

demonstrate Mr. Marderosian made an "excessive number" of improper objections.  Consequently, Plaintiffs' request for sanctions under Rule 30 is **DENIED**.

### C.   Rule 37 Sanctions

Defendants seek an award of sanctions under Rule 37 of the Federal Rules of Civil Procedure, arguing Plaintiffs filed a "frivolous motion." (Doc. 47 at 22.)   Though they offer argument as to why sanctions should be imposed, they do not offer any information as to the fees incurred in defending against the motion.  Accordingly, Defendants' request for sanctions is **DENIED**.

## VI.   Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiffs' request for sanctions under Rule 30 is **DENIED**;
2. Plaintiffs' request to re-open the deposition of Defendant Woessner is **DENIED**; and
3. Defendants' request for sanctions under Rule 37 is **DENIED**.

IT IS SO ORDERED.

Dated:   **May 29, 2015**              /s/ Jennifer L. Thurston
                                                                UNITED STATES MAGISTRATE JUDGE